KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-5684; (619) 557-7381
randy.jones2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR3326-JM |
|---|---|---|
| Plaintiff, | ) ) | DATE: April 2, 2010 |
| v. | ) ) | TIME: 1:30 p.m. |
| BRAD RAY SANTINI, | ) ) | **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* AND *SUPPLEMENTAL* MOTIONS *IN LIMINE* TO:** |
| Defendant. | ) ) | |
| | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | (A) ALLOW ATTORNEY-CONDUCTED VOIR DIRE;<br>(B) EXCLUDE MUG SHOTS;<br>(C) EXCLUDE EVIDENCE OF NERVOUSNESS;<br>(D) EXCLUDE EXPERT TESTIMONY;<br>(E) EXCLUDE VALUE TESTIMONY;<br>(F) EXCLUDE STRUCTURE TESTIMONY;<br>(G) EXCLUDE NARCOTICS FROM THE COURTROOM;<br>(H) ORDER PRODUCTION OF ANY SUPPLEMENTAL REPORTS AND TECS;<br>(I) REQUIRE GOVERNMENT TO ESTABLISH CHAIN OF CUSTODY;<br>(J) PRECLUDE TESTIMONY OF DR. KALISH;<br>(K) PRECLUDE 404(B), 608 AND 609 EVIDENCE, AND EVIDENCE NOT PRODUCED IN DISCOVERY;<br>(L) PRECLUDE TESTIMONY REGARDING DRUG TRAFFICKING ORGANIZATIONS;<br>(M) PERMIT THIRD PARTY CULPABILITY TESTIMONY; |

08cr3326-JM

|   |   |
|---|---|
| ) | **(N)  PERMIT SURREBUTTAL ARGUMENT; AND** |
| ) | **(O)  PRECLUDE POVERTY EVIDENCE** |
| ) | **TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES AND UNITED STATES' SUPPLEMENTAL MOTIONS IN LIMINE:** |
| ) | **(A)  FOR RECIPROCAL DISCOVERY; AND** |
| ) | **(B)  TO PRECLUDE DEFENSE EXPERT TESTIMONY** |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Randy K. Jones, Assistant United States Attorney, and hereby files its above-referenced response and opposition to Defendant's motions in limine and supplemental motions in limine. Said response is are based upon the files and records of the case, together with the attached statement of facts, memorandum of points and authorities and United States supplemental motions in limine.

## I.

## STATEMENT OF CASE

On October 1, 2008, a federal grand jury returned a two-count indictment charging Defendant Brad Ray Santini ("Santini") with knowingly and intentionally importing approximately 28.40 kilograms (approximately 62.48 pounds) of marijuana, in violation of Title 21 U.S.C. § 952 and 960 and Title 18, U.S.C. § 2 (Count 1); and knowingly and intentionally possessing, with intent to distribute, approximately 28.40 kilograms (approximately 62.48 pounds) of marijuana, in violation of 18 U.S.C. § 2 (Count 2).

On November 12, 2008, Defendant filed his pre-trial motions to compel discovery, preserve and re-weigh narcotics evidence, and for leave to file further motions. The United States filed its response and opposition to the motions on December 10, 2008, along with its motion for reciprocal discovery. On December 23, 2008, Defendant filed his notice of diminished capacity defense. According to the notice, the evidence will purportedly relate to Santini's reduced mental functioning, in part the result of head injuries he sustained from a car accident three years ago. On February 7, 2009, Defendant filed

his motion to dismiss the indictment due to the destruction of the bulk marijuana. On February 20, 2009, the district court denied the motion to dismiss.

On May 7, 2009, the Government filed its motions in limine. The Defendant filed his motions in limine on May 8, 2009.

On May 18, 2009, the district court granted the Defendant's request to continue or vacate the trial to allow time for a neuropsychologist to complete his examination of the Defendant and file his report regarding defendant's mental condition. On October 22, 2009, the district court granted the Government's request for leave to have the Defendant examined and evaluated by a Government psychiatrist.

On February 26, 2010, the district court set the motions in limine hearing for April 2, 2010 and jury trial for April 5, 2010.

On March 19, 2010, the Defendant filed his supplemental motions in limine. This response follows.

## II.

## STATEMENT OF FACTS

**A.    INCIDENT**

1.    Primary Inspection

On September 7, 2008 at approximately 1:15 a.m., Santini entered the United States from Mexico through lane #9 of the Calexico, California West Port of Entry driving a 1995 Jeep Cherokee bearing California license plate 3MRG423. Santini was the sole occupant and registered owner of the vehicle. Santini told Customs and Border Protection Officer (CBPO) Dave Thomas that he had been the registered owner of the vehicle for approximately nine months. Santini said he had traveled to Mexico to visit his girlfriend and was returning to his home in Hemet, California. Santini said he travels to Mexico once or twice a month. After checking the vehicle crossing history and finding that the vehicle had only crossed twice in six months, CBPO referred Santini to the vehicle secondary lot for further inspection.

//

//

2. <u>Secondary Inspection</u>

At the secondary lot, Santini told CBPO Eugene Stewart that he had nothing to declare and was going home. Santini again stated that he was the registered owner of the vehicle. CBPO Stewart asked Santini to get out of the car and open the hood and rear hatch, which he did. Once Santini was out of the car, Canine Enforcement Officer (CEO) Chad Jones was conducting a lot sweep using his Narcotic Detector Dog (NDD) "Bedo." The dog alerted to rear cargo area of the vehicle. CBPO Stewart escorted Santini into the vehicle secondary lot office for a patdown search which was negative.

CBPO Stewart returned to the vehicle secondary lot and searched the vehicle. A subsequent search of the car revealed a total of 15 packages wrapped in clear cellophane concealed within the rear seat and a spare tire. The packages had a combined weight of 28.40 kilograms (62.48 pounds). One of the packages was probed and revealed a green leafy substance that field tested positive for marijuana. Santini was arrested.

**B.    SANTINI'S STATEMENT**

Immigration and Customs Enforcement (ICE) Special Agents Jerry Conrad and Claudia Herzog were notified and responded to the port of entry. At approximately 6:15 a.m., Santini was advised of his Miranda rights in the English language by SA Conrad and invoked.

**C.    SANTINI'S CRIMINAL HISTORY**

A check of Government records indicates that Santini was arrested on June 17, 2004 for transportation of a controlled substance and possession of drug paraphernalia. On that date, at approximately 4:30 p.m., members of the Riverside County Sheriff's Department Southwest Corridor Task Force went to the residence located at 22420 Lemon Street, Wildomar, California to serve a narcotics search warrant. As officers conducted surveillance on the property, a white pick-up truck driven by defendant Santini drove away from the property. Deputies followed the vehicle for a short distance. The vehicle pulled to the side of the road. The driver, Santini, was contacted by the deputies. Santini said he had just got off work with Timothy Moore (the subject of the search warrant) and was headed home to Hemet. The deputies asked Santini if he had any drugs in the car and he said he did. Santini told the deputies he had "some speed and a pipe" in the vehicle. Santini consented to a search of the vehicle.

Deputies located a glass pipe used for smoking methamphetamine and a small plastic baggie containing a white crystal substance. The pipe was on the front seat and was coated on the inside with residue. The substance in the baggie was in the pocket of the driver side door handle. The substance field tested positive for methamphetamine and weighed .60 grams. Defendant was arrested for transportation of a controlled substance in violation of Cal. Health and Safety Code § 11379(A), possession of a controlled substance in violation of Cal Health and Safety Code § 11377, possession of drug paraphernalia in violation of Cal. Health and Safety Code § 11364, and driving under the influence of Cal. Vehicle Code § 23152. Santini made a post-arrest statement and told the deputies he had purchased the methamphetamine from a friend in Hemet.

Additional records checks indicates that Santini was convicted on August 3, 1998, for possession of a controlled substance in violation of Cal. Health and Safety Code § 11377(A)(misdemeanor) and sentenced to probation. Defendant was again arrested February 2, 1999, for transportation of a controlled substance in violation of Cal. Health and Safety Code § 11379(A), possession of a controlled substance in violation of Cal. Health and Safety Code § 11377, assault with a deadly weapon in violation of Cal. Penal Code § 245.

### III.

### GOVERNMENT'S RESPONSE AND OPPOSITION

#### A.    THE COURT SHOULD ALLOW ATTORNEY CONDUCTED VOIR DIRE

The Government does not oppose this Motion and defers to the Court. If the Court permits each party to conduct voir dire, the Government requests that each party be given the same amount of time.

#### B.    THE COURT SHOULD NOT EXCLUDE PHOTOGRAPHS OF DEFENDANT

If relevant, the United States may offer several photographs of "head shots" of the defendant immediately after his arrest. Specifically, these photographs depict a front and profile view of the Defendant's face. These photographs would be relevant and admissible, if the Defendant contests identity, because they could be used by the jury to compare the facial similarities in evaluating whether the Defendant is the same person who was arrested. In addition, any photographs presented would not contain any markings, numbers or other notations associated with "mugshots"–but would simply show the Defendant's face. As such, any claim that the probative value is substantially outweighed by danger

1  of unfair prejudice is baseless.

2     **C.**    **THE COURT SHOULD NOT EXCLUDE EVIDENCE OF NERVOUSNESS**

3 The Defendant's request to exclude evidence of nervousness should be denied. Apart from being the driver and sole occupant of a vehicle containing marijuana, evidence regarding the Defendant's demeanor and physical appearance is admissible and may also assist a jury in inferring guilty knowledge. United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir. 1990). See also United States v. Walitwarangkul, 808 F.2d 1352, 1354 (9th Cir. 1987) (a defendant's nervousness while being questioned by Customs officials supported finding of knowing possession of drugs).   This rule is premised on "the thought that the driver exercises dominion and control over his vehicle and its contents from which knowing possession of the contraband it contains may be inferred." United States v. Haro- Portillo, 531 F.2d 962, 963 (9th Cir. 1976).  See United States v. Rubio- Villareal, 927 F.2d 1495, 1499 (9th Cir. 1991) ("[e]xclusive dominion over the property or vehicle in which contraband is found is strong circumstantial evidence of possession"), vacated on other grounds, 967 F. 2d 294, 296 (9th Cir. 1992) (en banc). The Government does not intend to illicit testimony from its witnesses that the Defendant was "nervous."

    **D.**    **THE COURT SHOULD NOT EXCLUDE EXPERT TESTIMONY**

The Government recognizes its obligation to provide advance notice of any evidence it will seek to introduce as expert testimony under Federal Rule of Criminal Procedure 16 (A)(1)(E). At this point, the Government has given notice that it seeks to introduce the drug chemist, drug value expert, and mental health expert as expert witnesses under this rule.

    **E.**    **THE COURT SHOULD NOT EXCLUDE DRUG VALUE TESTIMONY**

The Government will offer expert testimony regarding the price of the marijuana. It should come as no surprise that the defense in this case will be that defendant did not know there was marijuana in the vehicle he was driving. The value of the marijuana is relevant to show that defendant knew there were drugs in the vehicle. It is reasonable to deduce that one carrying an extraordinarily valuable cargo would have complete knowledge of the presence of that cargo in the vehicle. United States v. Klimavicius-Viloria, 144 F.3d 1249 (9th Cir. 1998), United States v. Quintero-Barraza, 78 F.3d 1344 (9th Cir. 1995).

The Government also intends to introduce through the drug value expert, testimony that the 28.40 kilograms (or approximately 62.48 pounds) of marijuana is an amount for distribution, not for personal use. As indicated in the case law cited above, such evidence is relevant and admissible. Kinsey, 843 F.2d at 387-88. The Government intends to offer the drug value expert's testimony to show that Defendant intended to distribute the marijuana seized in this case. Such testimony is relevant to the issues of knowledge and intent to distribute. Accordingly, the Court should allow such evidence to enable the Government to prove essential elements of the charged offenses.

### F. THE COURT SHOULD NOT EXCLUDE STRUCTURE TESTIMONY

Defendant moves this court to exclude expert testimony about drug trafficking organizations. The Government does not anticipate offering evidence of drug trafficking organizations unless defendant puts it in issue. However, defendant testifies or cross-examines a witness such that evidence of the structure of the drug trafficking organization is necessary to rebut defendant's assertions, the Government reserves the right to offer such testimony.

### G. THE COURT SHOULD NOT EXCLUDE REPRESENTATIVE SAMPLES OF THE MARIJUANA FROM THE COURTROOM

As the Court is aware, the bulk marijuana was destroyed in this case. However, should the Defendant decline to stipulate that the substance found in the vehicle which he was driving was marijuana, a Schedule I controlled substance, the Government will bring in the samples the DEA Chemist tested in order to prove that the substance was in fact marijuana, an element of the crimes charged.

### H. THE GOVERNMENT HAS PRODUCED "SUPPLEMENTAL REPORTS" AND TECS INFORMATION

The Government has produced to the Defendant evidence from the Treasury Enforcement Communications System ("TECS") regarding border crossings of the vehicle Defendant was driving. The evidence indicates that Defendant told to the primary inspector that he owned the vehicle he was driving and that he traveled to Mexico once or twice a month to visit his girlfriend. Thus, the TECS information would be relevant to show the crossings of Defendant himself or of the vehicle he claims to own.

### 1. TECS Evidence is Not 404(b) Evidence

The Ninth Circuit has held that TECS information merely shows prior crossings and not wrongs or prior bad acts, and therefore, is not within the scope of Rule 404(b). United States v. Sanchez-Robles, 927 F.2d 1070, 1077 (9th Cir. 1991); see also United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999) (border crossings that are "intrinsic" acts are not 404(b) evidence).

Should this Court determine that such information is Rule 404(b) evidence, prior border crossings may become relevant to Defendant's case. The United States does not now know what Defendant may testify about at trial. To the extent that records of his border crossings may be useful to impeach his testimony, as, for example, as in this case, where he told the primary officer that he frequently crosses the border in that vehicle but the TECS history shows something different, or other areas of testimony, the United States requests the ability to use this evidence. Since he will likely deny knowledge of the marijuana in his vehicle, Defendant's credibility is at issue and material to this case.

Rule 404(b) of the Federal Rules of Evidence precludes the admission of evidence of "other ... acts . . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Evidence of other acts, however, is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

The Ninth Circuit has adopted a four-part test to determine the admissibility of evidence under Rule 404(b). See United States v. Romero, 282 F.3d 683, 687 (9th Cir. 2002); United States v. Montgomery, 150 F.3d 983, 1000-01 (9th Cir. 1998). The court should consider the following: (1) the evidence of other acts must tend to prove a material point; (2) (in some cases) the other acts must be similar to the offense charged; (3) proof of the other act must be based on sufficient evidence; and (4) the other act must not be too remote in time. Id. In addition to satisfying the four-part test, evidence of other acts must also satisfy the Rule 403 balancing test – its probative value must not be substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403.

Here, how and when the Defendant crossed into and out of Mexico may be relevant to impeach his statements, and may also be relevant to his plan, motive, or preparation to commit the charged conduct. Moreover, the probative value is not substantially outweighed by any prejudicial effect. Evidence of this act is admissible under Rule 404(b) for purposes of proving general intent and absence

1  of mistake or accident.

2          2.        <u>TECS Testimony Admissible as Public Record</u>

3          The Ninth Circuit has held that this type of crossing information may be admitted as a public
4  record. <u>See</u> <u>United States v. Orozco</u>, 590 F.2d 789, 793 (9th Cir. 1979) (holding TECS admissible as
5  a public record under FRE 803(8)).  Therefore, if a sufficient foundation is laid, the TECS information
6  would be admissible.  This evidence is not "expert testimony," therefore, as a public record, all that is
7  necessary for admissibility of the evidence is a witness who can establish that these records set forth the
8  activities of the office or agency or reflect matters observed pursuant to duty imposed by law. <u>See</u> Fed.
9  R. Evid. 803(8).  Here, a Customs and Border Protection agent will be able to testify that the TECS
10 system records license plates for vehicles crossing through the United States / Mexico border.  Customs
11 and Border Protection is responsible for controlling and regulating entries of vehicles and persons into
12 and out of the United States from Mexico.  Thus, the TECS evidence squarely reflects the regularly
13 conducted activities of the agency.

14         Defendant also requests "supplemental reports."  The United States continues to comply with
15 its ongoing discovery obligations.  The United States is not currently aware of any supplemental reports
16 in this case.

17 **I.**        **CHAIN OF CUSTODY**

18         The test of admissibility of physical objects connected with the commission of a crime requires
19 a showing that the object is in substantially the same condition as when the crime was committed (or
20 the object seized).  Factors to be considered are the nature of the article, the circumstances surrounding
21 its preservation and custody, and the likelihood of inter-meddlers tampering with it.  There is, however,
22 a presumption of regularity in the handling of exhibits by public officials. <u>United States v. Kaiser</u>, 660
23 F.2d 724, 733 (9th Cir. 1981), *cert. denied*, 445 U.S. 856 (1982), *overruled on other grounds,*
24 <u>United States v. DeBright</u>, 730 F.2d 1255, 1259 (9th Cir. 1984) (*en banc*).

25         If this Court finds that there is a reasonable possibility that a piece of evidence has not changed
26 in a material way, the Court has the discretion to admit the evidence. <u>Id</u>.

27 //

28 //

The United States is not required, in establishing chain of custody, to call all persons who may have come into contact with the piece of evidence. Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960).

### J. TESTIMONY OF DR. MARK KALISH

#### 1. Request for Daubert Hearing

Defendant requests a Daubert hearing regarding Dr. Mark Kalish to determine if his opinion of Defendant's mental condition is relevant and reliable. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1995).

As this court is aware, if specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. Determining whether expert testimony would assist the trier-of-fact in understanding the facts at issue is within the sound discretion of the trial judge. United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). An expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704.

Here, the Government intends to introduce the testimony of a Dr. Kalish, a board certified psychiatrist and neurologist, about Defendant's mental condition. Dr. Kalish will testify, among other things, that Defendant's brain injury does not make him vulnerable to manipulation, deception or exploitation. Dr. Kalish will base his opinions on interviews he conducted with the Defendant and his mother; a review of the reports related to the incident and Defendant's criminal history; and the report generated by defense expert, Dr. Dean Dellis. Including in these reports is information regarding the Defendant's prior arrests and drug use, and his silence. Dr. Kalish will testify that the methodology he used meets the standard of reliability and admissibility set forth in Daubert and Kumho Tire. See United States v. Crisp, 324 F. 3d 261 (4th Cir. 2003); United States v. George, 363 F. 3d 666 (7th Cir. 2004); United States v. Mitchell, 365 F. 3d 215 (3rd Cir. 2004).

  2. <u>Production of Audio Recordings</u>

The Government produced these recordings to Defendant on March 25, 2010.

  3. <u>The Court Should Not Preclude Dr. Kalish's Testimony</u>
    <u>Regarding Defendant's Arrests, Drug Use or Silence</u>

The court should allow Dr. Kalish to testify as to what he based his opinions on, including Defendant's prior arrests and drug use, and his invoking of his <u>Miranda</u> rights, and to show that Defendant is resistant to manipulation.

K. 404(B), 608 AND 609 EVIDENCE, AND EVIDENCE
  <u>NOT YET PRODUCED IN DISCOVERY</u>

  1. <u>404(B) Evidence</u>

The United States does not seek to offer any 404 (b) evidence of the Defendant in its case-in-chief.

  2. <u>The Government Should Be Allowed to Cross-Examine Santini</u>
    <u>About His Prior 1999 and 2004 Transportation of a</u>
    <u>Controlled Substance Incidents Under Rule 608(b) and 609 Evidence</u>

Even if the Government does not introduce evidence of any prior bad acts by the Defendant in it's case in chief, it should be allowed the opportunity to cross-examine the Defendant about any evidence that concerns his character for untruthfulness. Rule 608(b) provides: "Specific instances of conduct by a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness. . . ." Fed. R. Evid. 608(b).

Here, the Defendant has several drug convictions, including a 1999 arrest and conviction for transportation of a controlled substance and possession of a controlled substance, in violation of Cal. H&S Code sections 11379(A) and 11377, respectively. He also has a 2004 arrest and conviction for transportation of a controlled substance, possession of a controlled substance, and possession of drug paraphernalia in violation of Cal. H&S Code sections 11379(A), 11377 and 11364, respectively. The Government should be allowed to cross-examine the Defendant about these specific instances of misconduct, if he takes the witness stand in this case.

1    3.    The Government Understands its Continuing Obligation to Produce Discovery

The Defendant requests this court preclude any discovery not yet produced by the Government. The Defendant states in his opening papers that, "In two trials within the last month, this prosecutor has withheld discoverable evidence until the final moment, apparently to obtain a tactical advantage at trial." (Defendant's Supplemental In Limine Motions page 4)Defense counsel further states that, "To prevent the gamemanship apparent in these other recent trials, the Court should preclude any discovery not previously produced to defense counsel in the 18 months that this case has been pending." (Id at p. 5)

As an officer of the Court, this prosecutor is aware of the government's continuing obligation to provide discovery. This prosecutor can assure the Court that the Government takes its discovery obligations seriously, and that this prosecutor has never "withheld" discovery in <u>any</u> trial for tactical advantage or for any other reasons. This prosecutor treats the baseless and unwarranted allegations by defense counsel as an affront to this prosecutor's good reputation and standing with this court and other courts within this district. Furthermore, neither of the defense counsel in the instant case were present during the earlier trials, nor were they personally involved in any of the proceedings in those trials, and therefore would have no personal knowledge of the facts and circumstances of those trials. Accordingly, this Court should deny the defense's request to preclude discovery.

## L.    **EVIDENCE OF DRUG TRAFFICKING ORGANIZATIONS**

The Government does not intend to illicit testimony from any witness about drug smuggling organizations, unless the Defendant "opens the door" to such testimony. The Government does not anticipate offering evidence of drug trafficking organizations unless defendant puts it in issue. If defendant testifies or cross-examines a witness such that evidence of the structure of the drug trafficking organization is necessary to rebut defendant's assertions, the Government reserves the right to offer such testimony.

## M.    **DEFENDANT SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE OF THIRD-PARTY CULPABILITY ABSENT A PRELIMINARY SHOWING THAT SPECIFIC EVIDENCE IS RELEVANT AND ADMISSIBLE**

Defendant has indicated in his moving papers that he may pursue a theory of third-party culpability in this case. Specifically, that "...others had the knowledge, opportunity, motive, et cetera, to commit the offenses charged." (Defendant's Supplemental Motions in limine, pages 9-10.)

While a defendant has a right to adduce relevant evidence of third-party culpability, Perry v. Rushen, 713 F.2d 1447, 1449 (9th Cir. 1983), such evidence is not admissible "if it simply affords a possible ground of suspicion against such person; rather, it must be coupled with substantial evidence tending to directly connect that person with the actual commission of the offense." Guam v. Ignacio, 10 F.3d 608, 615 (9th Cir. 1993) (citation and internal quotations omitted).

Moreover, a defendant's right to present evidence which may exonerate him is not absolute, and it may have to "bow to accommodate other legitimate interests in the criminal trial process." Chambers v. Mississippi, 410 U.S. 284, 295 (1973). For instance, evidence a party seeks to introduce must still meet the requirements of the Federal Rules of Evidence to be admissible. The evidence sought to be introduced must be relevant. Perry, 713 F.2d at 1449. Not any and all speculative evidence may be admitted. The evidence must also be probative. United States v. Vallejo, 237 F.3d 1008, 1023 (9th Cir. 2001), as amended, 246 F.3d 1150 (9th Cir. 2001). There is also, as always, the question of whether the putative probative value of Defendant's alleged evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Federal Rule of Evidence 403.

The Ninth Circuit has limited what evidence may be considered relevant and admissible under the theory of third-party culpability. In Vallejo, the seminal case on third-party culpability, the Ninth Circuit found that there was relevant evidence that tended to prove that a person other than the defendant committed the crime charged. In Vallejo, however, the defendant was able to draw significant similarities between himself and a third party, including evidence that the third party was arrested for importing almost the same quantity of marijuana, the marijuana was hidden in similar compartments, both arrests occurred at the same port of entry, the arrests occurred within one month and four days of each other, and the third party was the former owner of the vehicle the defendant was driving and executed a release of liability of the vehicle less than two weeks before the defendant's arrest. Id. Altogether, the Court found that the circumstances "infuse this evidence with the unique relevance to the central defense theory – that Vallejo did not know of the drugs in the car." Id.

By contrast, if Defendant cannot provide a preliminary showing of comparable similarities between himself and an alleged third-party, then he should be precluded from presenting such evidence to avoid the very real risk of irrelevance, in violation of Federal Rule of Evidence 401, or confusion of

1  the jury, in violation of Rule 403.  See United States v. Perkins, 937 F.2d 1397, 1400 (9th Cir. 1991)
2  (recognizing district court's authority to preclude evidence of third-party culpability pursuant to Rule
3  403, "if it is likely to confuse the issues or mislead the jury.")  Also, the exclusion of such evidence may
4  be justified where the evidence of a similar arrest is too remote to be relevant.  See United States v.
5  Galvan-Garcia, No. 04-50531, 133 Fed. Appx. 393, 394 (9th Cir. May 20, 2005) (unpublished) (citing
6  Vallejo, 237 F.3d at 1023).

7  Additionally, evidence of the identity and criminal activity of a third party may constitute
8  improper prior bad acts evidence under Rule 404(b), "if the characteristics of both the prior offense and
9  the charged offense are not in any way distinctive, but are similar to numerous other crimes committed
10 by persons other than the defendant, [in which case] no inference of identity can arise."  Id. (quotation
11 omitted); see also Galvan-Garcia, 133 Fed. Appx. at 394 (distinguishing Perkins and holding that the
12 exclusion of such evidence under Rule 404(b) may be justified where there is nothing "novel or distinct"
13 about the two cases).

14 At a minimum, this Court may limit the scope of evidence which Defendant can present at trial
15 as evidence of third-party culpability.  In an unpublished case arising from this District, the defendant
16 was precluded from presenting evidence obtained from a search warrant and limited to cross-
17 examination of a Government witness for impeachment evidence.  In United States v. Banuelos, Nos.
18 03-50065, 03-50071, 88 Fed. Appx. 188 (9th Cir. Feb. 13, 2004), the Defendant appealed his conviction
19 on drug smuggling charges, claiming the District Court erroneously excluded evidence of third-party
20 culpability.  Defendant sought to admit evidence of a search warrant which "contained statements by
21 a police officer detailing the information he had received about a potential drug trafficker, including
22 details about the suspected criminal activity relayed to him by other sources."  Id., 88 Fed. Appx. at 189-
23 90.  The Ninth Circuit held that the search warrant was properly excluded as hearsay, in addition to other
24 bases.  Id. at 190.

25 Ultimately, this Court should preclude Defendant's argument of third-party culpability unless
26 and until he meets a minimum showing that the circumstances "infuse this evidence with the unique
27 relevance" to Defendant's theory that [she] was unaware of the presence of drugs in the vehicle."  See
28 Vallejo, 237 F.3d at 1023.  Furthermore, prior to arguing that another party is subject to an ongoing

investigation, Defendant must first establish sufficient evidence of the same. See Perkins, 937 F.2d at 1400. Even assuming evidence of another party's criminal conduct can be established, the admission of such evidence would only serve to confuse the issues. See Fed. R. Crim. P. 403. Without further information, therefore, any argument that takes the jury too far afield of these facts should be precluded.

For the above reasons, this Court should preclude Defendant from introducing evidence of, making arguments concerning, or asking questions about any putative third-party culpability defense.[1]

### N. THE COURT SHOULD NOT PERMIT SURREBUTTAL ARGUMENT

The Federal Rules of Criminal Procedure dictate that the Government, in light of its burden of proof, should be the last voice that the jury hears before deliberating. Fed. R. Crim. Pro. 29.1. While extremely sparse, the small body of case-law addressing the possibility of surrebuttal makes clear that such a departure from the federal rules is justified only in the rarest of circumstances. No case law supports such a drastic remedy in a straight-forward, one-issue, one-day border bust trial where the entire sum of all closing arguments lasted barely an hour. The Government, as frequently pointed out by the court and defense counsel, shoulders a heavy burden of proof. For that reason, it is given the last word in closing arguments. The Second Circuit explained this logic in United States v. Garcia, 94 F.3d 57 (2d Cir. 1996), where the court affirmed the district court's decision to refuse surrebuttal, despite the fact that Defendant offered an insanity defense upon which he bore the burden of proof. The Government charged Garcia with being a felon in possession of a firearm. Prior to jury selection, Defendant requested surrebuttal argument and the court declined. Id. at 63. After discussing Rule 29.1 and the court's discretion concerning courtroom procedures, the Second Circuit found that even where a defendant bears the burden of proof on one issue, such as an insanity defense, the Government still retains the right to be the last voice heard by the jury:

//
//

---

[1] Should this Court allow Defendant to pursue his theory at trial, that would open the door to structure evidence. If that happens, the Government requests permission to put on a structure expert to explain to the jury the operations of drug smuggling organizations. Defendant should not be allowed to hide behind the specter of large drug smuggling organizations without the jury learning just how such organizations operate (by, for example, paying people such as Mr. Santini to run drugs into the United States).

> [E]ven though a defendant may raise an insanity defense and may be required to carry the burden of proof on that issue, at all times during a criminal trial, the burden of proving guilt beyond a reasonable doubt - the highest burden that exists in our judicial system - remains with the prosecution. It is therefore quite appropriate that the prosecution have the opportunity to rebut the defendant's arguments, not the other way around.

Id. In Garcia, Defendant even bore the burden of proof on one element, a hurdle not confronting the defendant in this case. In spite of that burden, the Garcia court concluded that surrebuttal was not appropriate because the Government still bore the heaviest burden of all.

In light of this significant burden, only the rarest of circumstances will justify allowing a defendant surrebuttal, namely where the prosecution springs upon a Defendant a "new theory of guilt" at the last minute. See United States v. Gleason, 616 F.2d 2 (2d Cir. 1979), cert. denied, 444 U.S. 1082 (1980). Even assuming some new theory, however, the opinions approving the concept of a defense surrebuttal all involve extremely complex cases. Accordingly, this Court should not allow surrebuttal in this case.

### O.  POVERTY EVIDENCE

The Government is unclear as to what specifically Defendant has an issue with. The Government does not intend to illicit testimony about Defendant's finances. In fact, the Government specifically filed a motion in limine to prevent such testimony about Defendant's finances. Without more information as to what the Defendant is trying to preclude, the Government is unable to respond further.

### IV.

### UNITED STATES SUPPLEMENTAL MOTIONS IN LIMINE

### A.  RENEWED MOTION FOR RECIPROCAL DISCOVERY

The United States renews its motion for reciprocal discovery. As of the date of the filing of these motions in limine, Defendant has produced no reciprocal discovery. The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2, which requires the production of prior statements of all witnesses, except for those of Defendant. Defendant has not provided the United States with any documents or statements. Accordingly, the United States intends to object at trial and ask this Court to suppress any evidence at trial which has not

been provided to the United States.

### B. THE COURT SHOULD PRECLUDE DEFENSE EXPERT TESTIMONY

Defendant has provided notice that it intends to offer expert testimony by Dr. Dean Dellis about the affect of brain damage suffered by Defendant as a result of a car accident. It is anticipated that the Defendant may argue that as a result of this brain damage, Defendant is susceptible to manipulation, deception or exploitation.

If the Court determines that Defendant may introduce expert testimony, the United States requests a hearing to determine this expert's qualifications and relevance of the expert's testimony pursuant to Federal Rule of Evidence 702 and Kumbo Tire Co. v. Carmichael, 526 U.S. 1327, 150 (1999). See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist the jury in understanding the case): see also United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir.) Cert denied, 530 U.S. 1268 (2000).

### V.
### CONCLUSION

Based on the foregoing, the Defendant's motions in limine and supplemental motions in limine, should be denied and the Government's supplemental motions in limine should be granted.

DATED: March 26, 2010

    Respectfully Submitted,

    KAREN P. HEWITT
    United States Attorney

    s/ Randy K. Jones
    _____
    RANDY K. JONES
    Assistant United States Attorney
    Attorneys for Plaintiff
    United States of America
    Email: randy.jones2@usdoj.gov

KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5684; (619) 557-7381
randy.jones2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE JEFFREY T. MILLER)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BRAD RAY SANTINI, ) <br> ) <br> Defendant. ) <br> ) | Case No. 08cr3326-JM <br><br> CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, RANDY K. JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I have caused service of United States' Response and Opposition to Defendant's Motions in Limine on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**1. Bridget Kennedy**
**2. Gregory Murphy**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 26, 2010

           s/ Randy K. Jones
           RANDY K. JONES